The case for argument this morning is 15-1177, In Re Aqua Products. Mr. Barney, you've saved 10 minutes for rebuttal. Please proceed. May it please the Court, James Barney on behalf of Aqua Products. Section 316E of the IPR statute contains 27 words. And focusing just on the text of those 27 words, two things are clear. First, the word shall is mandatory and non-discretionary. So, to the extent there is a, quote, proposition of unpatentability in an inter-parties review instituted under this chapter, there is no dispute that the petitioner shall bear that burden by a preponderance of the evidence. The statute permits no discretion on that point. Second, the word unpatentability is a broad term that applies to both issued claims and pending claims. So, for instance, during prosecution, application claims are referred to as either patentable or unpatentable. Issued claims can likewise be referred to as patentable or unpatentable. And, in fact, Section 318 of the IPR statute uses patentable and unpatentable in referring to both issued claims and proposed amended claims. Now, compare that with Section 315 of the IPR statute, which deals with district court and ITC proceedings. There, Congress used the terms validity and invalidity when referring to claims of issued patents. But doesn't that just underscore the point that when it comes to agency proceedings, whether it's normal examination or re-examination or these proceedings, Congress has always understood that the question at hand is patentability versus unpatentability. And Congress is also making clear that when you're dealing with the exact same question for an issued patent claim in district court, it's validity or invalidity. So the assertion that patent – the usage of the term patentability doesn't – in the statute doesn't really, for me, carry the day. The question really is, what does it mean to be a proposition of unpatentability? And is it really the petitioner that has the burden of carrying the proposition of unpatentability when these amended claims were not part of the proceeding in the first instance? I think that's the assumption that you want us to make, and I'd like you to explain why that assumption is the necessary conclusion. Certainly, Your Honor. To go back to your first point, there is no evidence that the term invalidity is only used to refer to district court proceedings and unpatentability is only used to refer to patent office proceedings. In fact, the opposite is true. First of all, in the AIA itself, in Section 18 of the AIA, which deals – which is an uncodified, sun-setting provision dealing with CBMs, Congress specifically used the word invalidity when referring to issued claims that are subject to a CBM procedure. That's a patent office procedure. And so Congress most certainly does and has used the term invalidity even in patent office procedures, as well as if you look at the legislative history. Now, this statute took ten years of deliberations before it was finally enacted, spanning five separate Congresses. And if you look at the legislative history of this statute, what you see is that in earlier versions of what became 316E, Congress did use the word invalidity, and they put the burden on the petitioner to prove propositions of invalidity by a preponderance of the evidence. But that all changed in 2010 with a manager's amendment where they did two things. They added subsection – or what became 316A9, which gives the patent office rulemaking authority with respect to motions to amend. But at the same time they did that, Congress changed the word invalidity in 316E to unpatentability. And that shows that Congress uses that word intentionally to differentiate it from invalidity. They intentionally broadened out the burden in 316E at the same time they gave – Yvonne, could you go back to my question of why is it that the petitioner bears the burden of a proposition of unpatentability when it's the patent owner that, through a motion to amend, is the one that's proposing substitute claims? In other words, it's the patent owner, as I see it, that's trying to inject into the process, in the middle of the process, these brand new claims that had not been considered, that were not part of the original patent. Sure, Your Honor. The statute, 316E, again, uses the word shall. So whatever a proposition of unpatentability is, we know that the petitioner shall bear that burden. In an IPR, instituted under this chapter, and that same phraseology is used throughout the IPR statute to indicate things that occur after institution. Can I ask you this very specific version of that? When the petitioner says you, the patent owner, are wrong in asserting that your substitute claim does not introduce new matter, is that a proposition of unpatentability? Your Honor, I would characterize – In your brief, you come awfully close to saying that on the question of new matter, which is a patentability 112 question, the patent owner has the burden of persuasion. Is that your position? And if so, doesn't that create the gap in 316E for saying 316E probably doesn't apply to all propositions of unpatentability? I wouldn't call it a burden of persuasion, Your Honor. I would call that part of the patent owner's burden of production. Somebody has to – the board has to decide there either is or there is not new matter. Correct. That's – if it is a written description question, a factual question, there therefore must be an evidentiary burden of persuasion. Who has it? By statute under 316D, the patent owner has the burden, I would say, of the burden of production to show that the amendment doesn't add new matter. Why? The reissue statute has identical language in it. Section 102 is called conditions of patentability, the title to the section. 102, 103, and 112 provide, especially 112, analogous provisions of limitations on patentability. In no place does the burden rest on the patent owner to either come forward with evidence when you file a reissue application, Mr. Barney. Do you have an obligation to affirmatively establish to the PTO that you're not adding new matter, or do you submit it and it's the burden on the patent office to evaluate that condition of the patentability of the new claims like all others? I agree with that point, Your Honor. I agree. I wouldn't call it a burden of persuasion. The statute says that a proposed amendment cannot add new matter or be broader. And so those are reasons why a proposed amendment can be denied. I don't think I would call it a burden of persuasion on the patent owner. The patent owner has to move and has to show what the amendment is, but it's up to the board to decide whether or not that proposed amendment has added new matter or is broader than the original claims. So why isn't this a simple distinction between the burden of production, the burden of coming forward, and the final burden of proof? Certainly a movement, somebody who moves to amend the claims, needs to explain why, as for any motion. That's why I do have to say why I made this motion, and this is why it ought to be granted. Not as a matter of the ultimate burden of proof, persuasion, but as a matter of the initial burden on any movement, the burden of production, the burden of coming forward to put the matter before the tribunal. Isn't that what we're talking about? Yes, Your Honor, that's correct. 316d, a motion under 316d, is a motion to propose substitute claims. And if that motion is granted, if that relief is granted, the proposed substitute claims are added to the IPR proceeding. The mechanism to get those claims added to the IPR proceeding is to file a motion, but the only thing that needs to be shown in the motion is what is the amendment? What amendment are you making? And the board can decide whether that amendment is broadening or adds new matter. Do you agree that 316e is limited to addressing the burden of persuasion and does not apply to the burden of production? Yes, Your Honor, I think 316e goes to the ultimate burden of persuasion on the issue of unpatentability. Courts and agencies have often inserted burdens of production as a matter of managing litigation. That doesn't change the ultimate burden of persuasion. So I think what 316e is speaking to is the ultimate burden of persuasion. Is it your view that under 316a-9, the agency has the authority to place burdens of production on the patent owner with its motion to amend that's beyond those that are currently listed in Rule 121? Your Honor, I believe that the statute would allow the PTO to draft rules placing a burden of production on the patent owner as long as in doing so it does not place the ultimate burden of persuasion on the patent owner. And 121a-2i is an example of that. So just hypothetically, if the agency – I understand your position is the burden of persuasion is on the petitioner. But if the agency had issued through rulemaking the requirements set forth in master image and amended Rule 21 in that way and said these are the sorts of things that a patent owner needs to explain in a motion to amend, see, and then all the requirements in master image. Would that, in your view, be something within their power to do? Again, we're talking about burden of production, not burden of persuasion. Right. I don't think they would be permitted to do that under the statute because they would then essentially be forcing the patent owner to make out a prima facie case of patentability over what could be vast quantities of prior art. Master image has several categories of prior art, but if you're dealing with something like a pharmaceutical patent, that could be hundreds of references. And I don't think – Why do they lack authority to do that? Because of 316e, Your Honor. 316e mandates – Because of 316e is dealing with the burden of persuasion only. Right. But that's what master image requires. Master image requires the patent owner – I think you may have misunderstood the question. I apologize. I think he's not asking you about the burden of persuasion. He's asking whether there is authority to do what Eidel, Pree, and master image did with respect to the burden of production only. Right. I think that if you have a burden of production – I mean, you can call it a burden of production, but if what you're requiring the patentee to do is to actually come forward with evidence to persuade the board that you are prima facie patentable over a whole series of different pieces of prior art, that's not a burden of production. That's a burden of persuasion. A burden of production doesn't have to persuade anybody. A burden of production just requires you to come forward with evidence, and once that – But the burden of coming forward is always on the movement. It doesn't change the ultimate burden of proof. Whether you call it rather than the burden of production, I think we really are talking about the burden of coming forward. But unless you come forward sufficiently – it looked to me in going back through the record that there's very little discussion about this motion practice, and it looks as if everybody assumed that standard motion practice would apply. And standard motion practice does have a burden, certainly, of coming forward to the point where your motion is not dismissed for whatever – all the reasons motions can be dismissed without looking at the merits. My perception is that this is what they had in mind. Nothing more elaborate, nothing fancier. You are the movement. You've got a burden if you make a motion, if you want your motion to be entertained. Is that your understanding? That is my understanding, Your Honor. Again, a motion under 316D is a motion to propose amended claims and the criteria for being able to propose amended claims. Now, remember, when that relief is granted, even the PTO agrees that those proposed amended claims do not just automatically issue in a certificate. They are added. The word added appears in 316 – I'm sorry, 318A. When you propose amended claims, if they meet the criteria that Congress has established, which is that they're non-broadening and they add new matter, those amended claims are added to the IPR. The mechanism by which that happens is by motion. So, yes, you do have a motion – a burden to come forward because you're the movement, so you have to identify what the amended claims are. But you don't have a burden of persuasion to show that those amended claims are patentable. That occurs later, after those claims are added to the IPR. Once they become part of the IPR, we then look at 316E, which says, in an IPR instituted under this chapter, the petitioner shall bear that burden of proving unpatentability. Is anything you're arguing suggests that the petitioner, in that circumstance, if we were to agree with you and we would say that the petitioner has the burden of persuasion with respect to motions from men, does anything limit or cabin the petitioner from using grounds other than those and bringing in other prior art, you know, kind of the idle free? I know you object to that because the burden was on the patent owner to differentiate between all kinds of prior art. But there's not, I guess, can I assume that there's nothing you would point to that would say that the petitioner in those circumstances would be limited in terms of what they could bring forward? I'm not aware of anything that would limit the petitioner from bringing in art from outside the proceedings. And logically, they would have to, because if you add a limitation, then of course that may implicate references that were not the references upon which the IPR was instituted. But yes, they can bring in references from outside. But it is the petitioner's burden. Well, when you say they can bring in references from outside, don't you mean the PTO has been delegated the authority by the statute to decide in that circumstance what can happen? The current set of statutory and regulatory enactments don't seem to cover that issue. So you're saying, yes, they can bring it in. Doesn't the PTO have to decide, since they have substantive and procedural rulemaking authority, what they think is appropriate? And then once they do, that's what has to be followed? Yes, Your Honor. I didn't speak clearly enough. I don't see anything that would preclude them from doing that. I don't see anything in the rule that requires that. I don't see anything that precludes it. So there would have to be some sort of substantive rulemaking. Of course, by definition, the amended claims are narrow. So there would probably not necessarily be new prior art, because it would be the same prior art that would be applicable to the broader claims. It depends, Your Honor. If you add a limitation that just is something, a new limitation that doesn't appear in any of the references, it's possible the petitioner may know of some other reference that does have that limitation that they would want to then bring in. But I agree with Judge Moore that the current rules that were made via the notice and comment rulemaking don't seem to require that. But I don't see anything in the statute that would preclude it. Let me walk you back to the question I asked you, which didn't go anywhere, and that is supposing you call it a burden of submission. Any patent owner submitting any document or proposal to the board necessarily has certain obligations. Yes, Your Honor. Well, I agree. I may not be understanding your question. Are you asking me if… I'm not asking. I'm commenting, but what I'm saying is that when you make a submission to the board, it's going to be adequate as an attorney. You're under certain obligations, just as you would be in filing a pleading in court. And by filing that submission, you are providing certain information to the board. That always happens. Yes, Your Honor. I agree. And if it doesn't, it goes nowhere. That's right. So I think that is exactly analogous or perhaps a better explanation of what this burden of production is. You have to come forward with evidence. If you don't put your amended claims in, then you're not going to get amended claims because you haven't come forward with anything. You have to do more than just bring in the amended claims, right? You have a burden of production to bring in evidence to support their patentability. Your Honor, I don't believe that's true under 316E. 316D says that you have to make a motion to propose amended claims. So you have to explain to the patent office what the amended claims are. You have to show where the amendment is. That's what you have to do as the movement. You have to put those amended claims forward. All I have to do is to put in the amended claims and that's it? Well, they don't automatically issue, Your Honor. They get added to the… But what's the answer to that question? Is that all you have to do is to bring in the amended claims? You don't have to support them in any way with evidence? Well, you have to show that they're non-broadening. There has to be enough in your motion that it's clear that the amendment is non-broadening and adds new matter. That's it? That's it. And it has to respond… Which again is just a procedural burden of production. Even the patent office has agreed. That's merely procedural. It doesn't mean you have to prevail on those grounds of unpatentability. You don't even have to address all grounds of unpatentability. You just have to show that it's relevant to at least one. That prevents patent owners from using the amendment process to address issues that really shouldn't be before the board, such as 101 issues and 112 issues. So getting back to an earlier question I asked, if the PTO amended its regulations to say one of the requirements in the content of the motion to amend is for the patent owner to explain or address the prior art of record in the IPR proceeding. Let's say there's 10 references in the IPR proceeding. And the PTO says, with your motion, you have to address these 10 references. Would that be impermissible under their authority to issue regulations, standards, and procedures for a motion to amend? Your Honor, I think that would depend on the exact wording of the regulation. The way you just described it, requiring the patent owner simply to address certain things, to comment on certain things, that may not go afoul of the statute as long as it's clear that that's not a burden of persuasion and that the petitioner can't simply sit back and do nothing and then have that proposed amendment denied merely because the patent owner didn't do enough in its explanation. A burden of production is not a burden of persuasion. So yes, you can require the patent owner, I think, to address certain things as long as the burden of persuasion remains on the petitioner. And if there is no petitioner? If the petitioner has settled out or gone bankrupt or whatever or is not covered by the amendments or could care less, even though others might be, what happens then? According to the statute, as long as the amendment is non-broadening and adds no new matter, that amendment should issue as a matter of course. Wait, what do you mean it should issue? 318 says that the patent office has the obligation to assess the patentability of either the originally challenged claims or amended claims. The amendment doesn't just, when you say the amendment issues, you don't mean the claim issues with the amendment in it automatically without the patent office doing its own review at that point, do you? The patent office has to make a determination, Your Honor, but the determination is an adjudication. We know that the IPR procedure is a constrained proceeding. So even with issue claims, although they call it a determination of patentability, we know they're not looking at 101, we know they're not looking at 112, we know they're not looking at anything other than printed prior art under 102-103. You're not suggesting, are you, that the patent office would then automatically have to issue a claim whenever a petitioner pulls out, as the statute expressly in 317 allows for a petitioner to pull out and the office to make the decision as to whether to dismiss or to go forward and decide the patentability of the claims. Is that what the statute allows for? My point, Your Honor, is that when you get to 318A and the patent office has to make that determination of patentability, the only thing the office has to make the determination of patentability is the arguments that the litigants put forth. And if the petitioner has dropped out or hasn't put forth a counter-argument against that amended claim, and if the amended claim otherwise meets the requirements of 316D, the non-broadening as new matter, maybe matter, of course, is not the right terminology, but just like in a district court, if the other side makes no argument and... If the record before the patent office, even in the absence of additional argument, is sufficient for the patent office to determine that it's unpatentable under one of the grounds asserted, 102 or 103, the patent office would still have the right to do that, right? I'm not sure, Your Honor. I don't believe so. Your Honor, I'm going to have to rely on the PTO, because in their brief on the second question of what happens when a petitioner drops out, the PTO agreed with us that if 316E places the burden on petitioners to prove a proposition of unpatentability, a universal burden, when that petitioner drops out, the patent office, according to their brief, doesn't have the ability to... The statute doesn't provide for re-examination, for the board to have a new examination and look for new priority. That's correct, Your Honor. The IPR procedure is not an examinational procedure. It's an adjudicatory procedure, just like it does have... Congress intended for that to be only a limited determination of patentability. It's not the same thing as an examiner saying it's patentable, because nobody's done a search, nobody's looking at 101, nobody's looking at 112, nobody's looking at anything other than printed publications under 102 and 103, so it's a very constrained analysis. Congress understood that. They knew that this determination of patentability was not the end-all, be-all, meaning this claim can never be challenged again. It simply means that based on what was presented in this limited proceeding, there's a determination that the petitioner didn't carry its burden. Even if I agree with you on that proposition, which I'm not saying whether I do or don't, but even if I do, it's still possible that a petitioner could decide to drop out despite having already made a sufficient showing of unpatentability, right? I apologize. I didn't understand your hypothetical, but yes, if the petitioner had put evidence on record and then drops out, then I would agree that the PTO, the board could certainly look at what was already brought into the record of the proceeding. I apologize if I didn't understand your hypothetical. Mr. Breyer, can I ask you, do you have any information about how often the situation that has been of some concern in our thinking about this and our opinions around this, namely a motion to amend not opposed by the petitioner? I did some Westlaw research. I found one and only one. Do you have some information about that? Only anecdotal, Your Honor, that it's fairly rare that most times the petitioner stays in the case and challenges amendments. And that certainly was the situation in our case. Zodiac challenged our amendment, so we don't fit into that rare category. And also, more to your point, with respect to this sort of policy concern about this one particular problem, that has to be counterbalanced against the fact that the IPR statute allows the patent office to dismiss IPRs after institution on the basis of private settlement. And the patent office does that on a routine basis. And when the patent office dismisses instituted IPRs, it is literally leaving in place claims that it believed at the time of institution were likely invalid. And those claims have the presumption of validity and the full scope and no intervening rights associated with them. In contrast, a much better procedure is allowing those claims to issue in amended form, because at least then they're narrower in scope and they have intervening rights. It's going to be a huge protection for a lot of potential infringers. We're well into your rebuttal, so I'm going to suggest that you might want to sit down and let's hear from the government. Thank you. May it please the court. Good morning, your honors. In Section 316A9 of Title 35, Congress, through the American Vents Act, extended to the United States Patent and Trademark Office a type of rulemaking authority it had never extended before. And that was the authority— Counselor, that authority that Congress extended was to prescribe regulations, correct? Yes. And under the AIA, there's a clear definition as to what constitutes a regulation. And there's a difference between a regulation and an order. Are you aware of that distinction? I'm not sure under the AIA, your honor, but I understand— Under the APA, I'm sorry. Yeah, of course I understand the distinction between a rule and an order, but your honor, in this case, we have a rule. So is Ida Free an order? Am I correct in that that's an order under the APA? By the board, that's correct, your honor. Right. See, you really don't have a rule that addresses the issue that's before the court today. Your honor, we disagree with that. We do have a rule, and the rule is— You have an order that's interpreting other regulations or other rules, which you don't have. The PTO did not promulgate an express regulation such as it did for under 316E. There is no express regulation with respect to the duty of a patent owner having to prove penability of IPR claims, amended claims. There is, your honor, and it's Rule 4220. 4220 places the burden on a movement for any motion to be placed on whoever moves that motion, and in the case of a motion to amend— In the enactment of Regulation 42, picking up on, I think, a very good question by my colleague, did the PTO articulate an interpretation at some point, at any point in the course of enacting that regulation of 316E, or did it at least apparently ignore that statutory provision altogether? If your honor is looking for something that connects 4220 to a motion to amend— I'm looking for a Chevron-like interpretation of the statute somewhere. Where did the PTO offer a Chevron-entitled deference interpretation of 316E? Where can I find that? Well, your honor, our position at a threshold matter is that 316E does not apply to this situation. Their aqua products and its supporting amici have raised different constructions of 316— Is your answer that nowhere? Is your answer nowhere? Where, if anywhere, did the PTO proffer an interpretation of 316E to which I need to give deference? Your honor, we would say our promulgation of Rule 4220, and when we promulgated 4220, we specifically linked it to motions to amend. In that instance, we would say— But E isn't about motions to amend. E is about the evidentiary standard, and as we've all noted, it doesn't mention motions to amend. So just—this is a simple question. Is there anywhere in any rulemaking or decision proffered by the agency that articulates an interpretation of 316E that would be entitled to Chevron deference? Your honor— Not can I infer one from the fact that you enacted a regulation. Is it discussed anywhere at any point by the agency? It's discussed in the briefing before this court, your honor. And the briefing before this court explains how it is the United States Patent and Trademark Office got to the rule we got to and why it is 4220 was promulgated the way it was. And when we—this is just not an ex post rationalization. When we promulgated 4220, we specifically pointed to motions to amend and the need for a movement— The regulation on motions to amend does impose an obligation on the movement, but it doesn't go as far as you're saying it does. There's nothing in the regulation that says that once a patent owner moves to amend a claim, then that they assume a burden of patentability. Your honor, what 4220 says pretty clearly in 4220C is that the movement bears the burden of persuasion. Well, it says that, but the remainder of the regulation also says that that burden is to show that the amended claims do not go beyond the—that it's within the scope of the instituted claims. And it also has—it can only follow one motion. So there is a burden that the regulation that 4220 refers to, but I don't see anything in the regulation. That places a burden on the patent owner that you're claiming it does. You interpreted—the interpretation that you're putting before this court was pursuant to Idle Free, wasn't it? I mean, that's your interpretation. Your honor, the interpretation that fleshes out exactly how a patent owner will go about complying with its burden that we promulgated in 4220 is described in Idle Free. And it's also described, again, in Master Image, which is a precedential decision of the board, which in and of itself has sufficient formality— Those are orders. Those are not regulations. Under the APA, those are orders. Your honor, the fact is— And the statute says that the director shall prescribe regulations. And you have not prescribed a regulation with respect to the burden that a patent owner has when amending, other than what's already in here. Your honor, we would disagree with that. 4220 does assign the burden of proving entitlement to the motion to the movement. And I agree that 4220 goes on and says the motion may be denied if it doesn't present a reasonable number of claims, if it doesn't narrow the claim, et cetera. Right, that's a threshold question because that's really important here, is that the question of what a motion to amend effectuates. Assuming a motion to amend is satisfactory under those criteria, you don't get an amendment automatically to the claims. You get the amendment that becomes part of the IPR, subject to the unpatentability challenges. Your honor, that's, of course, correct. In the way the rule— It's a burden with respect to the requirements of 316D, not a burden with respect to the ultimate conclusion of patentability and whether that amendment will issue as part of a certificate. Because, your honor, 4220C explains that the moving party has the burden of proof to establish that's entitled to the relief requested. But the relief requested is that I want an amendment to become part of this proceeding. The ultimate relief is that once a patentability determination is made, it may or may not—a certificate may or may not issue because 318 says it doesn't issue unless and until the board decides to go to a final decision. And unless the board determines that it's patentable. So the determination we have to make is patentability. And I agree with the court that 42121 has some additional requirements, but it does not say a motion to amend shall be granted when it does not present an unreasonable number of claims, etc. Those are provisions when it can be denied. Can you focus on this essentially two-step process? The motion to amend is a motion to—what does 318 say? To add. Once it's added, it has to be assessed. Why does not 42.20 apply only to the first step, the motion to add? So you have the burden of showing you have to add it to the proceeding, but you don't have a burden of persuasion in the assessment of its patentability once added to the proceeding. Because, your honor, as an effective matter, that's not how these proceedings operate, and it's not how patent owners want them to operate. And let me explain to you why. Most of the petitions that are filed in the PTO are filed as an outgrowth of district court litigation. These patents are very valuable, and many of them are involved in litigation. If a motion to amend comes in and that claim is granted, there is intervening rights. The litigation is essentially over. There is no more dispute about the patent owner's entitlement to infringement or damages under the original claim because the original claim is gone. So if a patent owner were to come in at day 30 after institution and say, you know what, I'd like to move to amend. And our rule said, great, cancel the claims in your patent that you want to replace, and we'll take your new claims in, and then we'll move forward with a trial on that. I agree that's one possible way to approach this scenario. But, your honor, I don't think anybody would be served by that. Why didn't you formulate or promulgate a regulation that's based on what you just told us now? I mean, you've articulated a really good foundation for a regulation that, in my view, does not exist. And you've cobbled together an order under an adjudicatory process, and you want us to adopt and look at that order as if it was a regulation. If the PTO had actually promulgated a regulation that addresses the issue, as you're putting before this court, that's similar to E, 316E, we'd have a totally different situation before us. But the problem here is that you're asking us to look at an order that interprets something that's not in the regulation. Your honor, it interprets the regulation, and under our – we get considerable deference in defining what that regulation means. And I totally agree. Suppose we had no regulations here. All we had was idle, free, and master image, which said what the standard is. Would you argue that those adjudicatory rulings would be entitled to Chevron deference? I would argue that, particularly in the case of master image, master image is a precedential decision by the board. It was voted on by the full board, 250-plus judges, including all the statutory members of the board, and it was also reviewed and could have been vetoed by the director of the agency. It has sufficient formality to be entitled to Chevron deference. This court itself has issued opinions extending Chevron deference to agency decisions like that. Chevron deference does not rely on a rulemaking. More importantly, and to get to your point, Judge Dike, if we didn't have 4220 and all we had were these decisions, we still wouldn't have a problem here. And the reason is we don't read 316E as commanding that a burden of proof be placed on a petitioner's proposition of unpatentability when the proposition that we're looking at is a proposition to amend a patent. In other words, we think 316E is silent about this. So even if we didn't have 4220, here's the world we would have. Do you agree that once the claim comes into the proceeding, if the motion is granted, that the burden of persuasion then rests on the petitioner? Your Honor, that's not how our trials operate, and that's not how we've designed them. That's not how the patent owners would want them to operate. I submit. I could be wrong, but I don't think patent owners want to start a proceeding by giving up on the claim that was challenged in the first place. I'm not so sure about that. The motion aspect for amending claims takes place during the institution phase. Isn't that right? That's what's intended, that it essentially establishes the subject matter that will then be litigated in the litigation phase. I'm concerned that we're making this practice just so complicated that nobody can understand it, that they won't really know what they can or can't do until somebody tells them after it's all over. And it looks as if you just look at it simplistically, that the idea is that if the patent owner thinks the situation can be improved one way or another by amending the claims, narrowing them, that's all that's allowed, is to narrow the claims. This all takes place at the point in which it's decided or not decided. We've already crossed the bridge of whether the office can, at the end of the institution phase, say we changed our mind, we withdraw the institution, go home. So all that the amendment does is establish the subject matter that's going to be litigated, just like any other threshold motion practice would clarify or narrow or restrict or establish the subject matter to be litigated. Why is this any different? I would think that on that scenario, there's plenty of room for regulatory order to have things go in a straightforward way. There are extremely tight time restraints on the entire proceeding. There were tradeoffs at the threshold of which the right to amend was significant. The aspect of estoppel in the district courts without any recourse of 102 or 103 is a powerful consequence of these proceedings. And the right and opportunity to amend within reason. We haven't yet gotten to the question of why the patent office denies so many proposed amendments. We'll save that for another day. But here we have the question of, in fact, with a motion to amend, we still have just only the more likely than not for one claim that then puts the entire revised structure into the litigation phase. And it seems to me that this is entirely in accord with standard motion practice. That's what the Congress, most of whom are lawyers, and all of the people over the 10 years of the genesis of this foresaw. And I just wonder why we're making it so complicated. Following along with what Judge Newton just asked, this seems like a very simple proposition. The issue decided by the board, which we've gone on bonk on, is whether the patent owner had the burden of showing patentability. 316E simply says the opposite. Now, there may be all sorts of sub-questions, but on the issue that was decided by the board, doesn't E simply state the opposite? It's directed to the opposite, Your Honor, which is why it doesn't apply. And I'd like to explain that more fully, but I want to go back to Judge Newman's question for just a second, because I do agree, Your Honor, with nearly everything you said, except at the beginning, you said something which is not quite consistent with how the statute is written, and I just want to clarify that. A motion to amend is not filed during the institution phase. The institution phase is, yes, the part of the proceeding where the parties go back and forth and decide what, or the board decides, I should say, what the contours of that instituted IPR is going to look like if instituted. The patent owner does not have to respond at all. It's a preliminary response if they respond, and the preliminary response, a good preliminary response, is not directed, in fact, to patentability. It's directed to the shortcomings in the petition in the first place. And the reason why we allow patent owners to respond in that way is because if we institute, that's when the patent owner's burden of production comes in with respect to the things we instituted on, because we don't want to put too much on a patent owner in the first place if we're not going to institute. That's very interesting, because it seems to me it's a digression, but I recently saw a case in which the board said that an argument raised by the patent owner during the litigation phase would not be considered because it hadn't been mentioned at the institution phase. That's for another session, because I think we're all trying to get to the same goal of a valid, relatively simple, efficient way of resolving patentability on the most significant issues of patentability. And what concerns me is that instead of making it simpler than district court litigation, we're making it much more complicated. Your Honor, respectfully, what we've done is we've made it a lot simpler than reexamination. The institution phase is not the period of the proceeding in which the motion to amend comes in. But it does come in during the course of the IPR. It's not something that comes after the fact when the board decides whether it wants to issue a different patent with amended claims. The motion to amend is during and in the process. The 317 and 318 come after 316. You're still talking about responding to a ground of unpatentability at that point, so we're still defining the scope of the litigation at that point. Your Honor, the motion to amend comes in after the trial is instituted, after it's ongoing. During the course of the ongoing proceeding. And it comes in at the time at which a patent owner makes its formal response to the petition. It responds to the petitioner's proposals of unpatentability. And then, if they choose to avail themselves of the opportunity to make a motion to amend, they make, they being the patent owner, their own proposal. They propose to amend the patent. In terms of 316E language, getting back to Judge Lurie, the motion to amend and the claims proposed are in the IPR. Your Honor, they're not in the IPR. And you used the phrase directed to, and I think you're not always the most helpful phrase in the world. But you said 316E, somehow you don't think by its words covers the assessment of patentability of a proposed substitute claim. Where's the opening? Okay, thank you, Your Honor. And this gets back also to Judge Lurie's question. It's the language of 316E, the structure of 316 itself, and then additional provisions in Title 35. With respect to the language of 316E. 316E refers to an IPR instituted under the chapter, and it refers to a proposition of unpatentability. The petitioner says this proposed claim is not patentable. Your Honor, respectfully, the most important word in what you just said is if. If the petitioner says that. That's the problem we're trying to address. If the petitioner says that. This is a little detour, but it's important to me. How often has that happened? As I say, I went on Westlaw, and I think I found 127 IPRs in which the board ruled on a motion to amend. And I found only one in which the petitioner didn't oppose, in which, of all things, the patent owner was the United States. But is this a real problem or a theoretical problem, or what? Well, Your Honor, it depends if you mean they opposed that they raised their own position of unpatentability. Because if the patent owner comes in, and the patent owner is in the very best position to figure out what claim that they might be entitled to now. They get one shot. They know the record as well as anybody. They know their invention better than anybody. I'm sorry. Can you ask – this is sort of a numerical question. How often has it happened that when the patent owner proposes a substitute claim in a motion to amend, the petitioner or no petitioner opposes? That's very rare. I found one. Do you have any reason to think there's more than one? I do have reason to think there's more than one. But there's not a significantly number more. It's not enough to debate. But the point I was trying to make, Your Honor, is that just coming in and opposing is not necessarily a position of unpatentability. The patent owner has come in, and the patent owner has said, here's why my claim is patentable, because of this one feature over here, for example. This feature is the magic. This is what gets it over the prior art. This is what was invented. If the patent – I'm sorry. If the petitioner comes in and says, that's not true. That one feature doesn't get you over the prior art. Let me explain to you why. I don't know that we can categorize that as a proposition of unpatentability, because as a matter of unpatentability, it's not completely fleshed out in the first place. It is not a prima facie case of unpatentability. It is not an assessment of the gram factors. It is a rebuttal of the patent owner's argument as to why the claim was patentable. That's exactly what happened in this case. But wait. The whole contemplation here is that the motion to amend must respond to an already asserted proposition of unpatentability. That assumes that it's either 102 or 103, and it's defined prior art. So the motion has to respond to that proposition. Then the question is, does the petitioner say, yeah, that's a decent response, given that it's not obvious? Or the petitioner will say, no, you're purporting to respond, but it's still obvious under the same prior art. And that's the way they would respond, right? Yes, Your Honor, but in that hypothetical, the patent owner complied with the requirement to respond. But it's still the same proposition of unpatentability that was asserted in the very beginning. It's still the same prior art, the same 102 or 103. The proposition of unpatentability has to do with the scope of the claim as a whole. If a limitation is added to a claim, and by the way, added to a claim because it's a contingent motion, that the board has already determined not to be patentable, it must be because there's some patently distinct invention there. Simply narrowing a patentable claim that is determined to be unpatentable doesn't get you a patent. If we start with the proposition that something is not entitled to a patent, it makes very little sense to say, oh, but we'll assume a narrower version of that is entitled to a patent. No, there has to be some patentable. It doesn't have to make the determination of unpatentability, but it is still the same proposition of unpatentability that started the whole IPA. Your Honor, I would completely disagree with that. It would be a totally different proposition because it has to be somehow patently distinct from what was determined to be unpatentable in the first place. If your invention is a light bulb with a filament and a glass ball, and someone has a filament and a glass ball, and then you come in and you say, oh, I want to file a motion to amend. My filament is coated in tungsten. Well, the unpatentability or patentability of a tungsten-coated filament in a light bulb is not the same proposition of patentability. I don't understand. You keep saying a claim was determined to be unpatentable. The motions to amend don't come in at a time when the determination of unpatentability has been made. All that's been made is a determination to institute at that point, right? I mean, the amendment is not always occurring after the Patent Office has rendered a final decision of unpatentability. Isn't it occurring often early in the process after the institution of the proceeding when there, in fact, has been no determination of unpatentability, only a determination to institute proceedings? No. No? Motions to amend are decided in nearly every single case after the decision is made that the original claims are not patentable. I didn't ask when they're decided. I asked when they're made. When is the patentee making a motion to amend? You said a motion to amend is made after a determination of unpatentability. Yes. I stand by that. And here's why. We could bicker about made versus filed. I agree that the paper is filed in the agency at a time when nothing's really happened in the trial yet. I disagree that the motion is made at that point because it's a contingent motion. The patent owner says, I request to move to amend, to substitute these claims, if my original claims are found to be unpatentable. So the patent owner themselves is saying, here's my motion. I filed it at the right time, and I would like you to take up this motion. I would like it to become an effective motion in this case for your review after you've made a determination that my original claims are unpatentable. And the reason they do it that way, Your Honor, is because they don't want intervening rights. They don't want to give up their original claim. They don't want to turn their back on the litigation and walk away. They don't. And that makes perfect sense. So as an agency that's been given very broad rulemaking authority to determine how these proceedings are going to work, we have to figure this out. How are we going to let patent owners file contingent motions that ask us not to figure out its patentability until after? That goes back to the questions that I was asking. You're talking about the broad rulemaking authority that PTO has. On Tuesday, August 14th, the PTO published in the Federal Register the final rules that it adopted. And it says in the summary, this final rule provides a consolidated set of rules relating to board trial practice for interparty reviews. It goes on to say this final review also provides a consolidated set of rules to implement the provisions of AIA, et cetera. So when I go and I look at the regulations that you're talking about here in this final rule, and I see something with respect to the burden that the petitioner has, and I look for the regulations that you're arguing before this court, I don't find a regulation to that. You're telling me that idle fire is an interpretation of your rulemaking authority and that idle fire itself, that order establishes what we should look at as a rule. Now, under 316A, it says the director shall prescribe regulations. It seems to me that even there you're limited into how you adopt or promulgate regulations, and you have to do it by way of the rules. Wouldn't it have been easier for you to go back and to simply promulgate a rule that establishes an evidentiary burden that you're putting before this court? Because that regulation does not exist. To answer your direct question, Your Honor, it is not easier to promulgate rules than it is to make a precedential decision. But more importantly, Your Honor, the question before this court today is whether or not 316E commands that the burden approved for a motion to amend be placed on the petitioner. Rule 42.20. I see the issue is that you've issued a judicatory decision that you want us to adopt to look at as a rule for the PTO with respect to this burden. And in my view, you cannot make rules that under the APA and under what I just read to you, the PTO cannot establish rules under the adjudicatory process. Your Honor, the rule we promulgated is 37 CFR 42.20C. 42.20C states, the moving party has the burden approved to establish that it is entitled to the requested relief. But when we look back at the Federal Register notices, it doesn't appear, to me at least, that the agency was considering the motion to amend question, which was a new novel issue for these new novel adjudicatory proceedings when it promulgated 42.20C. So to me, 42.20C just looked like a generic default rule for motions that the PTO had always had with respect to interference practice, and it was simply carrying it forward. And to the extent that the PTO may have been silently considering the possibility of motions to amend to also be thrown into 42.20C, well, then there was no analysis in these Federal Register notices to explain why the statute had a gap that allowed the agency preferred 316A9 to step in to that gap and then conclude that it would choose to assign the burden of proof on these motions to amend to the patent owner rather than the petitioner. So I guess my first question is, am I right that the Federal Register notices in 2012 don't contemplate the specific question of motions to amend with respect to 42.20? Your Honor, I see I'm out of time. Yes, feel free to answer. Thank you. You're not right. Our Federal Register notice specifically links 42.20 to motions to amend, and let me show you where it does that. Volume 77 at page 48619, which is where our commentary is on 42.20. And it says, Section 42.20A provides that relief other than a petition to institute a trial must be in the form of a motion. The rule is consistent with the requirement of 35 U.S.C. 316A1 and 316D as amended, and 35 U.S.C. 326A1 and 326D, which are relevant to post-grant review, which provide that requests to seal a document and requests to amend the patent be filed in the form of a motion. We were specifically linking— I did not interrupt, but our time is out. I want to ask, where is the notice and public comment on that regulation? Your Honor, what I just read to you from was in our final rule, which is where we respond to the public commentary. There was a notice of proposed rulemaking that had issued previous to this, which is where we gave the public notice of that rule and gave the public an opportunity to comment on it. And one last thing I'd like to say about this is that we go on in that commentary about the rule, and then we go to Section 42.20D, where we say that 42.20D provides that the Board may order briefing on any issue appropriate for final written determination. And then again, in that section, we refer back to any new claim added by amendment. So we definitely, when we promulgated 42.20, we definitely had our eyes on motions to amend. This is not something we're just arguing after the fact. Real quick, can you give me the pinpoint again? Sure. It's 77 Federal Register No. 157. It's dated Tuesday, August 14, 2012, and it's at page 48619. And the italic heading is Petition and Motion Practice. It's in sort of the bottom right-hand corner of the page. So that is the rule we promulgated to Drana. That is the rule that says that the person making the motion has the burden of proof. We believe that is what answers 316E. It was not just in Idle Free. It was not just in Master Image. But it was in the rule itself, and our interpretation of that rule in Idle Free, and certainly in Master Image, is entitled to great deference by this Court under our opinion. None of them mention 316E, though, right? Your Honor, our position is that 316E does not apply here. But even if you read 316E, we think for the reasons we've set out in our brief, that 316E has an ambiguity in it that would give us deference anyway. But again, our starting point is not that it's ambiguous, but that it doesn't apply. Thank you. Thank you, Judge. In order to keep things even, we'll add three minutes to the time that was remaining. Thank you, Your Honor. If you need it. Just a few points. With respect to 4220C, I did want to point out that in the legislative history of the statute, of course, when I was up here before, I focused on the change from invalidity to unpatentability. But there was an equally important change that occurred earlier in the legislative history. When it was originally drafted, going back to 2005 and 2006, the predecessor to 316E actually looked a little bit like 4220C. It said that the party advancing a proposition under this chapter shall have the burden of proving that proposition. So it was a very generic motion-based burden. They changed that. Congress specifically got rid of that and then went with a more specific burden and placing it on the petitioner to show a proposition of unpatentability. And so for the Patent Office to basically take this generic motion regulation and say, well, this governs all the burdens with respect to amended claims, well, Congress already considered that and discarded it. I think we should give deference to Congress. With respect to—there was a comment that—several comments that this is good for patent owners. Patent owners want this type of rule because when they get the amendment, it's a company about intervening rights, and I think he said it effectively ends the litigation. Well, it doesn't end the litigation. It may get rid of past damages, but, of course, if you have issued patents, you can use that patent going forward to seek an injunction. You can use it against other parties. So it doesn't necessarily end the litigation. And the fact of the matter is, and our client is proof of this, patent owners do want amended claims. A patent owner would much rather have an amended claim that's valid than to have their entire patent thrown out because it's been nearly impossible to amend the claims, which goes to the broader point of the balance that was struck by Congress in the AIA. This was not a one-sided legislation. Congress recognized that by passing the AIA, it was stripping rights away from patent owners, patent owners who had obtained patents through the patent office, through the legal proceedings. They obtained an intellectual property right. They had a presumption of validity, often at great expense. They arranged their business fairs around that. Congress understood that by putting that intellectual property right back in jeopardy, stripping away the presumption of validity, lowering the burden down to a mere preponderance, and then allowing BRI standard, which makes it even easier, and the fact that petitioners don't even have to have constitutional standing, creates a lot of jeopardy for patent owners because they don't even have to be doing anything aggressive with their patents to find themselves in an IPR proceeding. IPRs can be brought merely to drive down the stock price of a patent-holding company to create investment opportunities, and Congress understood that, which is why they put in the amendment procedure to provide a relatively simple and easy way for patent owners to amend claims so that even if their original claim is proven to be invalid, they still have an opportunity to obtain a narrower valid claim. With respect, and I don't know that this got fully fleshed out, so I merely want to make sure that, Judge Lurie, that your question got answered with respect to 316E. There was some discussion about whether it was an opposite burden, and I just want to make clear, in case there's any confusion, that Congress, well, the agency cannot pass a regulation that does anything to eliminate the burden on a petitioner to show a proposition of unpatentability in an instituted IPR. That is just clear. But that is exactly what the PTO has done by placing the burden on patent owners to show patentability because those are two sides of the same coin. By placing the burden on a patent owner to show patentability, you are necessarily alleviating the petitioner from having to show unpatentability of that same claim, which is why it violates Section 316E. And then the last point that I would like to make with respect to contingent motions, first of all, not all motions have to be contingent, but even if they are contingent, at the time that the relief is granted, which is when the contingency occurs, that amended claim is still added to the IPR. That's what 318A says. The amended claim is added. And there may be a question of when that timing is, but there's no question that at some point the amended claim is added to the IPR. And 316E makes absolutely clear that a claim that's in an IPR that the burden flows to the petitioner to show unpatentability. Subject to any questions your honors may have, I have nothing else. Thank you. We thank the parties and the cases submitted. That concludes our proceeding for this morning. All rise.